UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
GLEN SCOTT MILNER,                      )   No. C14-1032RSL
                                        )
                    Plaintiff,          )
        v.                              )   ORDER GRANTING IN PART
                                        )   CROSS-MOTIONS FOR
UNITED STATES DEPARTMENT OF,            )   SUMMARY JUDGMENT
DEFENSE, *et al.*,                      )
                                        )
                    Defendants.         )
_____)

This matter comes before the Court on the parties' cross-motions for summary judgment. Dkt. # 16 and # 22. This case involves a request for information under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Having reviewed the memoranda and exhibits submitted by the parties as well as the letter rom the Reporters Committee for Freedom of the Press (Dkt. # 20-1), the Court finds as follows:

## BACKGROUND

On July 11, 2012, plaintiff submitted a FOIA request for "records related to a review or approval by the Department of Defense Explosives Safety Board for the Navy's planned second Explosives Handling Wharf at Naval Base Kitsap-Bangor." Dkt. # 17-1 at 2. Despite plaintiff's request for expedited processing, the Department took fourteen months to produce three redacted documents, one of which had already been released to plaintiff in response to an earlier FOIA request. Dkt. # 17-1 at 16-17. Plaintiff appealed, arguing that the

ORDER GRANTING IN PART CROSS-
MOTIONS FOR SUMMARY JUDGMENT

search for records was inadequate and that the redactions were improper. Dkt. # 17-1 at 18-21. Plaintiff had filed an Administrative Procedure Act action against the Navy in June 2012 seeking to enjoin construction of the second Explosives Handling Wharf until the Navy complied with the requirements of the National Environmental Policy Act ("NEPA"). <u>Ground Zero Center for Nonviolent Action v. United States Dep't of the Navy</u>, C12-5537RBL. Documents produced in that litigation helped plaintiff make his argument that the Department of Defense's response to the July 2012 FOIA request was inadequate.

Through the administrative appeal process, some of the redactions were removed and the matter was remanded to the Department for a new records search. Dkt. # 17-1 at 24. Plaintiff filed this action to challenge the remaining redactions and compel production of the requested documents on July 9, 2014. The Department made its final production of documents on January 27, 2015, noting for the first time that it would not produce any documents that had been made available to plaintiff as part of the administrative record in the NEPA litigation. Dkt. # 22-2 at 35-36. The documents that were produced contained redactions based on the following exemptions:

- Exemption 3 regarding critical infrastructure security information protected by 10 U.S.C. § 130e;
- Exemption 5 regarding information covered by the deliberative process privilege; and
- Exemption 6 in order to protect the personal privacy of low level and junior Department employees.

Dkt. # 17-3 at 3-72. The parties agree that the reasonableness of the Department's search and the propriety of the redactions can be decided on summary judgment.

## DISCUSSION

**A. FREEDOM OF INFORMATION ACT**

FOIA represents a balance "between the right of the public to know and the need of the

ORDER GRANTING IN PART CROSS-
MOTIONS FOR SUMMARY JUDGMENT            -2-

Government to keep information in confidence." John Doe Agency v. John Doe Corp., 493 U.S. 146, 152 (1989) (quoting H.R. Rep. No. 1497, at 6 (1966), reprinted in 1966 U.S.C.C.A.N. 2418, 2423). Those interests are often in conflict, and this case presents strong examples of both the public's need to have information that has an impact on citizens' personal safety and the government's need to keep certain sensitive information out of the hands of those who might desire to do great harm to our country. Despite the "strong presumption in favor of disclosure," Congress recognized that "legitimate governmental and private interests could be harmed by release of certain types of information and provided nine specific exemptions under which disclosure could be refused." U.S. Dep't of State v. Ray, 502 U.S. 164, 173 (1991); Fed. Bureau of Investigation v. Abramson, 456 U.S. 615, 621 (1982). The exemptions will be narrowly construed, with the burden on the agency to show that a document was properly withheld in order to foster the public disclosure objective of the statute. Dep't of the Air Force v. Rose, 425 U.S. 352, 361 (1976); Lahr v. Nat'l Transp. Safety Bd., 569 F.3d 964, 973 (9th Cir. 2009); 5 U.S.C. § 552(a)(4)(B).

When an agency asserts that an exemption applies to a particular document, the Court will presume that the agency is operating in good faith. Affidavits offered in support of the claimed exemption will be given full faith and credit "provided the justifications for nondisclosure are not controverted by contrary evidence in the record or by evidence of [agency] bad faith." Minier v. Central Intelligence Agency, 88 F.3d 796, 800 (9th Cir. 1996) (internal quotation marks omitted). The affidavits must, however, provide individualized information regarding each document in order to justify withholding. Where the affidavits lack specificity and provide only "boilerplate" explanations for why whole categories of documents should be exempt from disclosure without attempting to show that the revelation of the particular document at issue threatens the interest protected by the claimed exemption, the Court is unable to perform its review process and the explanation is inadequate. Wiener v. Fed. Bureau of

ORDER GRANTING IN PART CROSS-
MOTIONS FOR SUMMARY JUDGMENT            -3-

Investigation, 943 F.2d 972, 978-79 (9th Cir. 1991). With these principles in mind, each of the claimed exemptions is discussed below.

**B. EXEMPTION 3**

FOIA does not require production if a statute "requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue" and, if enacted after 2009, specifically cites to 5 U.S.C. § 552(b)(3). The Department justifies many of the redactions in this case based on 10 U.S.C. § 130e. That statute, which was enacted in 2011, specifically references § 552(b)(3) and authorizes the redaction of "critical infrastructure security information" ("CISI"). 10 U.S.C. § 130e(a). CISI is defined as "sensitive but unclassified information that, if disclosed, would reveal vulnerabilities in the Department of Defense critical infrastructure that, if exploited, would likely result in the significant disruption, destruction, or damage of or to Department of Defense operations, property, or facilities." 10 U.S.C. § 130e(c). Examples of the type of information that constitutes CISI are "information regarding the securing and safeguarding of explosives," "vulnerability assessments," and "explosives safety information (including storage and handling)." Id.[1]

Redactions in response to a FOIA request can be made under the statute only if the Secretary of Defense makes a written determination that:

---

[1] For three decades prior to 2011, information of this type was thought to be protected under Exemption 2. Mr. Milner, in a prior FOIA dispute regarding explosives safety quantity distance ("ESQD") records, pointed out that Exemption 2 rightly applied only to records relating to human resources and employee relations, not the type of explosives maps and data he was seeking. The Supreme Court agreed, and what had been called "High 2" records were suddenly unprotected. Milner v. Dep't of the Navy, 562 U.S. 562 (2011). In writing for the majority, Justice Kagan "recognize[d] the strength of the Navy's interest in protecting the ESQD data and maps and other similar information" and suggested that the government seek appropriate protections from Congress. Id. at 580-81. It did so, and Congress enacted 10 U.S.C. § 130e within months of the Supreme Court's decision.

ORDER GRANTING IN PART CROSS-
MOTIONS FOR SUMMARY JUDGMENT            -4-

> (1) the information is Department of Defense critical infrastructure security information; and
>
> (2) the public interest consideration in the disclosure of such information does not outweigh preventing the disclosure of such information.

10 U.S.C. § 130e(a). Plaintiff argues that the Department's determination that certain information was exempt from disclosure under § 130e is incorrect for three reasons. First, plaintiff argues that the redacted information regarding ESQD arcs does not fall within the definition of CISI because (a) that type of information has been made publicly available in the past and has not resulted in any significant disruption, destruction, or damage and (b) the project under consideration has not been built so disclosure would pose no actual risk. Section 130e was drafted in response to the nearly universal consensus that ESQD information could, if in the wrong hands, be used to wreak havoc and cause destruction. In the terms of the statute, the information, "if exploited, would likely result in the significant disruption, destruction, or damage of or to Department of Defense operations, property, or facilities." 10 U.S.C. § 130e(c). Congress specifically included "explosives safety information (including storage and handling)" in the list of examples of CISI. Id. Plaintiff fails to acknowledge, much less address, the terms or underlying purpose of the very statute he seeks to enforce. Nor is the prospective nature of a planning document dispositive. The fact that a document reflects explosive safety information regarding a planned storage and handling facility may make it less likely that the information will actually be exploited, but, if it were exploited, havoc would likely ensue.

Second, plaintiff argues that the Secretary was required to seek public input when determining whether the public's interest in the information outweighed the need for secrecy under § 130e(a)(2). It is not entirely clear what sort of public input or process plaintiff envisions. At points he suggests that a public notice and comment period is necessary, whereas other

ORDER GRANTING IN PART CROSS-
MOTIONS FOR SUMMARY JUDGMENT        -5-

portions of his memorandum suggest that requesting input from the person who made the FOIA request would be sufficient. The confusion is likely due to the fact that the statute contains no notice requirement: it simply requires the Secretary to balance two interests, presumably based on the information available.[2] As a practical matter, if the Secretary makes the § 130e(a)(2) determination based solely on the FOIA request itself, he may have very little information regarding why the requester, much less the public, is interested in the information.[3] The agency guidance on this issue therefore specifies that, in addition to any public interest information that is already available, the DFOIPO will "[c]ontact the FOIA requester advising" him that a CISI exemption is under consideration and providing "an opportunity to provide a statement . . . detailing the public interest in the release of the information." Dkt. # 22-2 at 25-26 (August 3,

---

[2] The legislative history similarly supports only a finding that Congress intended that the agency consider the public interest when determining whether CISI should be disclosed. Plaintiff has not identified any evidence showing that Congress intended to require particular notice or procedures before the determination was made.

[3] In the case at hand, the Department argues that it had more than a bare FOIA request and understood why the information was of interest based on a May 14, 2013, letter plaintiff had written regarding a different FOIA request. Dkt. # 17-4 at 5. Plaintiff points out, however, that the two requests were substantively different. The first was addressed to the Naval Ordnance Safety and Security Activity ("NOSSA") and sought only documents recommending or approving the Navy's plan to build a second Explosives Handling Wharf. Dkt. # 22-2 at 29. The Defense Freedom of Information Policy Officer ("DFOIPO"), in keeping with Department policy (discussed more fully in the text), contacted Mr. Milner to let him know that there were three pages which NOSSA considered to be CISI and to give him an opportunity to explain the public's interest in the requested information. Dkt. # 22-2 at 31-32. At the time, plaintiff had no idea that documents responsive to his July 2012 FOIA request were thought to be CISI and made no attempt to explain why Department of Defense Explosives Safety Board ("DDESB") documents were of interest. The DDESB is an entity created to provide objective advice on matters concerning explosives safety to the Department of Defense, and plaintiff states that the purpose of the July 2012 inquiry was to determine whether the DDESB was actually performing its oversight functions. Dkt. # 22-1 at 8-9. His response to the NOSSA inquiry did not capture "the strong public interest in learning about the nature and depth of the DDESB's review of the wharf project." Dkt. # 22-1 at 10.

ORDER GRANTING IN PART CROSS-
MOTIONS FOR SUMMARY JUDGMENT        -6-

2012, Memorandum from the Office of the Secretary of Defense).

While the Department's memorandum sets forth a procedure which, if followed, would likely result in a more informed and accurate balancing of the relevant interests, it reflects an internal agency procedure lacking the force of law. Plaintiff has not shown that the guidelines created a right or benefit in his favor or that he otherwise has standing to enforce an internal agency policy. See James v. U.S. Parole Comm'n, 159 F.3d 1200, 1206 (9th Cir. 1998) (plaintiff cannot rely on an internal agency statement because it did not have the force of law and was instead only an interpretive, procedural rule use to guide agency practice). His claim based on a lack of public notice therefore fails.

Plaintiff's third argument goes to the manner in which the Department determined whether the public interest in the disclosure of the CISI outweighed the need for secrecy under § 130e(a)(2). Plaintiff asserts that the Department simply applied an earlier § 130e determination without considering the public's interest in the context of the July 11, 2012, FOIA request. The record does not support that assertion. Mr. Herrington states that the Director of Administration and Management reviewed the records "in this case." Dkt. # 17 at ¶ 20. The Director's July 26, 2013, findings addressed both the nature of the information at issue (CISI) and the public interest in disclosure. Dkt. # 17-4 at 4-5. While § 130e requires the agency to balance the interests in disclosure and secrecy each time a FOIA request encompasses critical infrastructure security information,[4] the agency went through that exercise here.

---

[4] To the extent plaintiff is arguing that the agency was required to reevaluate its determination that certain information, such as the composition and condition of support pilings, the location of utility connections, or the ESQD arcs, is CISI in response to the July 11, 2012 FOIA, request, the Court disagrees. Where the content of the information has not changed and there is no reason to suspect that time or altered circumstances has reduced its criticality, § 130e simply requires a re-evaluation of the public and private interests. The Director expressly noted that the critical infrastructure security information reviewed as part of plaintiff's May 18, 2012, FOIA request was also within the documents

ORDER GRANTING IN PART CROSS-
MOTIONS FOR SUMMARY JUDGMENT            -7-

**C. EXEMPTION 5**

Exemption 5 protects from disclosure those documents which would be subject to a privilege in the civil discovery context, including the deliberative process privilege. Nat'l Labor Relations Bd. v. Sears, Roebuck & Co., 421 U.S. 132, 149 (1975); Lahr, 569 F.3d at 979.

> The deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance the quality of agency decisions by protecting open and frank discussion among those who make them within the Government.

Dep't of Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8-9 (2001) (internal citations and quotation marks omitted). To fall within this privilege, a document must be both predecisional (*i.e.*, prepared to assist an agency decisionmaker in arriving at a decision) and deliberative (*i.e.*, exposes the agency's decisionmaking process in such a way that it would discourage frank discussion and undermine the agency's ability to perform its functions). Lahr, 569 F.3d at 979-80.

Significant portions of Documents 6 and 7 were withheld under the deliberative process privilege. Mr. Herrington states that the redacted materials "consist of 15 questions and answers regarding the operations and locations of various buildings at Kitsap/Bangor." Dkt. # 17 at ¶ 33. The logistical information was used when deciding whether to preliminarily approve the construction of the second wharf and is therefore "predecisional." There is no indication that the redacted materials are anything other than facts "regarding the operations and locations of various buildings," however. The affidavit on which the Department relies does not show that the documents contain policy proposals or analysis, recommendations, critiques, or opinions

---

responsive to his July 11, 2012, request.

ORDER GRANTING IN PART CROSS-
MOTIONS FOR SUMMARY JUDGMENT         -8-

regarding the logistical data collected. The simple compilation of information necessary to inform a later decisionmaking process can hardly be described as "deliberative." Lahr, 569 F.3d at 983 (raw data used in the analysis ordered produced even though the analysis itself – including the concerns and thought processes of individuals who reviewed the data – could be withheld under Exemption 5). The Department has not adequately supported its claim of deliberative process privilege for Documents 6 and 7.

**D. EXEMPTION 6**

Exemption 6 protects from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). In his reply memorandum, plaintiff concedes that the redaction of the names and contact information of members of the Department of Defense who are at the military rank of Colonel or below and at a rank of GS-15 or below is appropriate. Dkt. # 28 at 11. He argues, however, that the Department has failed to show that all of the Exemption 6 redactions were made in keeping with those criteria. Plaintiff points to the redaction of contact information for the "Program Evaluation Division Director" in Document 1 as an example, arguing that the lack of any evidence regarding this individual's military rank and/or personnel grade makes it impossible to determine whether the redaction was appropriate. Id.

The Court will not impose a requirement that all redactions under Exemption 6 be accompanied by a statement regarding the individual's rank or grade. The Department must, however, clearly state that only the names and contact information of individuals who are at the military rank of Colonel or below and at a rank of GS-15 or below have been redacted. With regards to the Program Evaluation Division Director, the Department states only that his phone number was redacted "pursuant to exemption 6 for concerns about privacy." The Department is not entitled to summary judgment regarding the applicability of Exemption 6 to this information.

**E. REASONABLENESS OF SEARCH**

Pursuant to 5 U.S.C. § 552(a)(3)(A), upon receipt of a FOIA request that "reasonably describes" the records sought, an agency has a duty to "make the records promptly available to any person." As a general matter, the only exceptions to the disclosure requirement are set forth in § 552(b). To the extent a responsive record is identified, the agency must produce it, explain why it is unavailable for production, or claim one or more exemptions. Marks v. U.S. Dep't of Justice, 578 F.2d 261, 262 (9th Cir. 1978). In locating responsive records, the agency is required to conduct a "search reasonably calculated to uncover all relevant documents. . . . The adequacy of the search . . . is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case." Zemansky v. U.S. Envtl. Protection Agency, 767 F.2d 569, 571 (9th Cir. 1985).

The Department argues that it need not search documents that were previously produced in the NEPA case challenging the proposed second Explosives Handling Wharf because those records were already available to plaintiff for review. The Department does not assert that searching agency records as they are kept in the normal course would be difficult or explain how or why it chose to search its files for responsive documents while specifically excluding those that were previously produced. The documents that found their way into the NEPA case may or may not be responsive to the July 11, 2012, FOIA request: the Department's position foists upon plaintiff the onus of identifying which records "related to a review or approval by the Department of Defense Explosive Safety Board." In the absence of production and/or a Vaughn index, plaintiff is left to guess which documents may be deemed responsive and the basis for any redactions thereto. When the initial production was made, there was no mention of easily accessible documents that had not been searched simply because they were publicly available. Plaintiff would have had no reason to suspect that relevant, available records had not been

produced.

The Department makes no attempt to show that it would be unreasonably difficult to conduct a search of all of the accessible documents and either produce them or identify relevant exemptions. To the extent the Department seeks a blanket exclusion for all publicly-available documents, the argument is rejected: the documents are agency records and must, therefore, be made available absent an applicable exemption. Tax Analysts v. U.S. Dept. of Justice, 845 F.2d 1060, 1062 (D.C. Cir. 1988). As noted by the Eleventh Circuit, defendants' argument "comes dangerously close" to asking the Court to take on a legislative role and create a new exception to FOIA disclosure. Miccosukee Tribe of Indians of Fla. v. U.S., 516 F.3d 1235, 1253 (11th Cir. 2008). The Court declines to do so. "Unless a document falls into one of the nine recognized exemptions from disclosure under FOIA, it is due to be disclosed." Id. But see Mobley v. U.S. Central Intelligence Agency, 924 F. Supp.2d 24, 37 (D.D.C. 2013) (noting that it may be reasonable to interpret first person FOIA requests to be for non-public documents). The Department has not met its burden of demonstrating that it conducted a search reasonably calculated to uncover all relevant documents. Plaintiff is entitled to summary judgment regarding his adequacy of the search claim.

## CONCLUSION

For all of the foregoing reasons, defendants' motion for summary judgment (Dkt. # 16) and plaintiff's cross-motion for summary judgment (Dkt. # 22) are GRANTED in part and DENIED in part. Defendants' search for and production of documents were inadequate to the extent that agency records were excluded simply because they were otherwise available to plaintiff. In addition, the information provided is insufficient to justify the Exemption 5 and Exemption 6 redactions on Documents 1, 6, and 7. Defendants' application of 10 U.S.C. § 130e was not unlawful, however, and defendants are entitled to summary judgment on that claim.

Defendants shall, within ninety days of the date of this Order, conduct a new search and produce all non-exempt responsive records and a new index consistent with this Order. The Clerk of Court is directed to enter judgment in the above-captioned matter without prejudice to plaintiff's ability to seek an award of fees.

Dated this 17th day of July, 2015.

*/s/ Robert S. Lasnik*
Robert S. Lasnik
United States District Judge